[Civ. No. 14007. Second Dist., Div. One. May 7, 1943.]

JAMES LEE LANGHAM, a Minor, etc., et al., Appellants, v. WARNER J. NORLANDER, JR., Respondent.

William E. Empey for Appellants.

Crider, Runkle & Tilson for Respondent.

YORK, P. J.—The complaint herein alleged generally that the defendant so negligently, carelessly and unlawfully, op-

erated his automobile while backing it out of a private driveway, that he ran over the minor plaintiff, a child aged sixteen months, ''thereby throwing him to the ground with great force and violence,'' and as a result thereof said plaintiff sustained severe and permanent injuries. The answer denied all allegations of negligence or carelessness in the operation of the automobile by defendant, did not raise the issue of contributory negligence, but alleged that the accident in question was unavoidable. The jury brought in its verdict in favor of defendant, and this appeal is prosecuted from the judgment which was thereafter entered pursuant to such verdict.

The record herein reveals the following undisputed facts: On April 24, 1941, the day of the accident, the Langham family, consisting of the parents, the injured child and his older brother, aged four years, had been residing for about one year at 11309 Killion Place, North Hollywood, which premises adjoined on the west the private driveway where the accident occurred. The Schultz family, consisting of the parents and two children, aged nine and six years, respectively, resided next door to the Langhams at 11303 Killion Place, which adjoined the driveway on the east. The Schultz home was on the rear of the lot and in front of both houses were lawns surrounded by picket fences on the outside, and separated only by the private driveway. This driveway was 14 feet 11 inches in width, to the right of which a large pepper tree was growing, and north of the tree close to the driveway was a small bush. The Schultz and Langham children and other children of the neighborhood were in the habit of playing on the Schultz and Langham lawns practically every day when the weather permitted.

Respondent Norlander had known Mrs. Schultz for many years and was a frequent visitor at the Schultz home during the four and a half months they had resided at the Killion Place address, calling there once or twice a week during the daytime, as he was working nights. Respondent testified that prior to the day in question he had noticed both the Schultz and Langham children playing on the lawn in front of their homes; that he usually drove into the driveway and parked his car two feet off the driveway with the right wheels two feet over on the lawn, and on April 24th he parked his automobile ''between the pepper tree and the bush, with the right front fender nearly touching the bush,'' and that when he drove in on that day he noticed the Schultz children in the yard but did not notice the

Langham children. Respondent went to the Schultz home with the intention of picking up his wife and taking her home, but due to the fact that Mrs. Schultz was ill, Mrs. Norlander decided to stay, consequently he remained about ten minutes and left, his wife accompanying him to his car. He opened the rear door of the automobile and placed a package of laundry in the back seat, meanwhile talking to his wife, who was standing "alongside" of him. He then walked around in front of the car, got into the driver's seat, closed the door and started the motor. Before starting the motor, however, respondent looked out of the rear window and out of the window on the left side of the automobile. He said goodbye to his wife and the Schultz children and looking through the rear window he started to back his car out of the driveway. When he had traveled three-fourths of the length of his car, his wife shouted to him and he stopped after he had gone about the full length of the car. When he got out of the car, his wife was directly in front of it, close to the right front wheel, and she reached and pulled the infant James Lee Langham from underneath the front of the automobile.

Respondent further testified that before he started the motor he looked directly out of the rear window and "could see the ground approximately at the entrance to the driveway, just a little inside of the sidewalk line"; that he looked toward the left on the driver's side and did not look out of the right side of the car at any time, "only what I could see when I turned to my right and looked out of the rear window, what view I could catch of the road looking out of the rear window of the car also"; that he did not pay any particular attention to the right side; "as a matter of fact, the pepper tree would be in the way on the right side of the car . . . in order to back up I would have to drive a little to the left in order to miss the tree, and when I looked out of the back of the car the tree was right at the right rear fender, in line with this bush." He further testified that he had seen the injured child playing on the lawn many times before he drove in on April 24th.

Mrs. Langham, the mother of the injured child, testified that respondent drove in about half past four or a quarter to five on the day in question that he had been there for about five minutes when "I was sitting there, and I went into the house after my sewing, and left the children on the lawn; . . . they

were all there playing . . . I went from the lawn directly into the house to get my sewing and a few things I had there, and I went right back, and when I got to the door—I didn't stop for anything—they came and told me that Jimmie had been (hurt)."

Appellants urge that the evidence is insufficient to support the judgment for the reason that respondent was guilty of negligence as a matter of law, when he backed his automobile in the private driveway of a family yard, without looking backward to the right and to the left to see whether any small child might be in or near the backward path of his car.

In support of this contention, appellants cite the cases of *Cambou* v. *Marty*, 98 Cal.App. 598 [277 P. 365], and *Gorzeman* v. *Artz*, 13 Cal.App.2d 660 [57 P.2d 550]. In the Cambou case it was stated at page 603: "Any reasonable man can be charged with knowledge that a child is apt to be found at any place about the family yard. Charged with that knowledge, it becomes his duty to use vigilance and care before setting in motion a dangerous instrumentality in that locality. Failing in the duty he is negligent. We cannot concede that it is a harsh burden to place upon a visitor at a family home. Where a life may be jeopardized by a failure to make certain a clear path it surely is not unreasonable, as a matter of law, to insist that ordinary care demands some precaution before starting an automobile. Nor is it unreasonable to include within the required precaution the duty here announced. In the annotation to 44 A.L.R. at page 434, it is said: 'The tendency of the later cases would seem to indicate that the courts are requiring a higher degree of care on the part of the operators of automobiles toward children playing on or in proximity to their automobiles, particularly in those cases in which the driver had notice of the children's presence in or about the machine.' At this stage of our economic program all the best thought is being directed toward child welfare and the promotion of the physical, mental and moral welfare of the generation to succeed the present. A logical following out of the idea would suggest that in all contact with children a higher standard of care be established as necessary to meet the law's requirement of ordinary care under the circumstances. Concluding the present inquiry, it is obvious that a course of conduct which

indicates no care at all and a complete disregard of any caution will not measure up to such a standard or to any standard of ordinary prudence."

The Gorzeman case was an action by a parent and guardian ad litem for damages for personal injuries sustained by a three year old infant when a bakery truck backed over him. In that case the operator of the bakery truck was backing the truck in the driveway which circled plaintiff's home from such a position that he could not see where he was backing, although he might have known that children were present. The court held that it was the duty of the operator to use vigilance and care before setting in motion the automobile in that locality, and having failed in that duty, that he was negligent.

The actions and conduct of the drivers in the cited cases, in so far as care and prudence are concerned, are not comparable with the conduct of the driver of the automobile in the instant case.

Respondent admitted that he frequently visited the Schultz family and many times prior to the day of the accident he had seen the children of both families, including the injured child, playing on the front lawns of their homes adjacent to the driveway. Also, he admitted that while he looked to the left of his car as he started to back, he paid little or no attention to the right side, because the pepper tree was in the way on that side. This states the case in the light most favorable to appellants' contentions.

However, there was no evidence produced herein showing or tending to show whether the infant appellant was back of respondent's car or under the car when the same was put in motion. The child was picked up from under the front of the car after respondent had backed said car its full length. Although there were several small children near the car when the door was closed and the motor started, as well as a moment or so later when the car itself was backed, no one seems to have seen the child except when he was under the front end of the car. The very serious injuries sustained by the infant appellant were not such as would indicate whether he was back of the car and was knocked down, or whether he had crawled underneath the car and was injured by the under part of the car. Therefore, it cannot be said that it was negligence as a matter of law, under the facts proved,

to back the car "without first looking backward to the right and left for the likely presence of small children" or "without any other precaution to ascertain the likely presence of small children than looking backward from a sitting position in the front seat." If the jury had found that the child was in the rear of the automobile or where he could have been seen had respondent used other precautions than he did use, the cases cited by appellants would have been in point, but there is no direct evidence as to whether said child was under the car or back of it when it was started in motion.

The jury might well have concluded from all of the circumstances that the child was not in a position where he could have been seen by respondent before the latter started to back his automobile, unless respondent got down on the ground and looked underneath his car. Respondent called goodbye to the other children nearby, and the jury might have concluded that if the child was back of the car, some of the other persons present would have seen the child before he was discovered under respondent's car, or at least that respondent was entitled to assume that he would have been warned of the child's whereabouts.

Under the circumstances presented by the record, the question of respondent's negligence was a question of fact for the determination of the jury, and its verdict either for or against respondent would have to be upheld by this court.

For the reasons stated, the judgment appealed from is affirmed.

Doran, J., and White, J., concurred.