[Civ. No. 3568.   Fourth Dist.   Mar. 15, 1948.]

GARY LEROY SMITH, a Minor, etc., et al., Appellants, v. JOHN THOMAS HARGER et al., Respondents.

Rae B. Carter and John D. Chinello for Appellants.

Stammer & McKnight, James K. Barnum, James M. Thuesen, District Attorney, Robert M. Wash, Deputy District Attorney, Conley, Conley & Conley, Chester O. Hansen and John Said for Respondents.

BARNARD, P. J.—This is an action for damages for injuries suffered by the minor plaintiff when he was struck by a truck owned by the defendant Haddock and driven by the defendant Harger while on a school ground in Fresno, and for medical and other expenses incurred by the father of the boy. The accident occurred at 4:15 on the afternoon of April 23, 1945, while dirt was being hauled in to fill some low places in the school ground. By an arrangement between the school district and the playground department of the city the use of certain school grounds, including this one, was turned over to the playground department after school hours. The school day ended here at 3:30 p.m., and after that time the playground department assumed supervision and control over this playground and the school district exercised no supervision over any children who might play there after classes were dismissed for the day.

The complaint alleged that Gary was injured through the negligence of Harger while in the course of his employment by Haddock. The city of Fresno and the school district were joined as defendants on the theory that they were then exercising joint management and control over this playground. Carpenter, the principal of this school, one Quigley, the playground superintendent, and Mrs. Warren, the playground supervisor who was present and in charge at the time of the accident, were joined as defendants, it being alleged that in their several capacities each was then acting within the scope of his employment as an agent, servant and employee both of the city and of the school district in supervising the play of minor children on this school ground. Separate answers were filed amounting to a general denial and, with the exception of that of Harger and Haddock, raising the defenses of unavoidable accident and contributory negligence. During the trial the plaintiff dismissed the action against Quigley and the city of Fresno. A jury returned a verdict in favor of all of the remaining defendants. A motion for a new trial was denied and the plaintiffs have appealed from the judgment on the grounds that the evidence is insufficient, as a

matter of law, to support a judgment for the defendants, or for any of them, and that certain instructions given were prejudicially erroneous.

The evidence discloses the following. These school premises are approximately 600 feet long, north and south, and 300 feet wide, east and west. The school building occupies the easterly portion, and the westerly portion was used as a playground and was enclosed by the building on the east and by a fence on its south, west and north sides. On the day of the accident the superintendent of buildings for the school district arranged with the foreman for Haddock to have some dirt hauled in and spread in some low places on this school ground. The two went to the school ground where the principal, Carpenter, pointed out the low spots to be filled. These were all in the west half of the grounds, some to the north and some to the south. The foreman pointed out that it would be dangerous to work with the trucks on the school grounds with children about and the building superintendent assured him there would be supervision to watch the children. The foreman then instructed Harger where the fill was to be made and told him there would be children on the playground at times and that the supervisors would be there to look after them. The hauling started about 1 o'clock, three trucks being used. Harger had delivered and spread about a dozen loads before the accident occurred, during which operations any children on the grounds were kept away from the trucks by teachers or by employees of the playground department. The truck he was using was a dump truck with a tail gate hinged at the top and secured by hooks at the bottom. By levers in the cab the front end of the body could be raised and the hooks released permitting the tail gate to swing free and the dirt to flow out on the ground. The left door of the cab had been removed and there was a mirror attached to that door frame, enabling the driver to see along the left side of the truck but when the body was tilted he could not see along the right side.

Carpenter talked with the foreman, showing him the low places about 1 p. m. Ten minutes later he sent a notice to all room teachers advising them of the coming of the trucks and directing them that the children be warned. Later in the afternoon he sent a second notice to all teachers stating that the work would not be completed as soon as expected and telling them to warn the children to go directly home after school and stay there.

The injured minor was 5 years and 9 months old at the time. He was a pupil in the kindergarten in this school, his school hours being from 1 to 3:30 p. m. On receiving the first notice from the principal Gary's teacher called all the children together and told them that the trucks were working on the yard and that they must stay away from them. During the afternoon recess the children were not permitted to go on the school grounds to the west of the building. After receiving the second notice, and before dismissing the children at 3:30, Gary's teacher explained the matter again and told the children to leave by the door leading to the street on the east side, not to go onto the school grounds, to go directly home, and not to come back to the school grounds. When this teacher visited Gary at the hospital after the accident she asked him if she had not told him to stay away from the trucks, and he replied that she had. This teacher had previously warned the children almost daily about the danger from automobiles, and Gary's mother testified that she had similarly warned him from the time he could first understand until after he started to kindergarten.

Gary lived a short distance from this school and arrived home at 3:35. He changed his clothes, had something to eat, and started back to this school ground at about 5 or 10 minutes to 4. When he asked permission to return to the playground his mother at first refused to let him go. It does not clearly appear whether his mother later gave her permission or whether he went without it. He appeared on the playground entering by a corridor through the building from the east, with three other boys. As they emerged from the corridor they passed near Mrs. Warren, who told them to stay away from the grounds where the trucks were working. At that time possibly 50 children were on the playground but were on the northerly part thereof. Dirt had already been hauled and spread on this portion and the trucks were then working on the southerly portion. These boys then moved along the building toward the south and stopped. As Mrs. Warren watched them they started walking toward the south gate and then turned and ran westerly toward the rear end of the truck which was slowly moving northward. She ran toward the boys shouting at them to stay away from the truck, and as she was running and continuing to shout a warning the accident occurred. Apparently, the tail gate of the truck struck the boy. She saw Gary behind the truck,

to the east of its center, and as the backward movement of the truck started she saw him jump backwards and fall.

An eight-year-old boy who was with Gary testified that just before the accident he was standing near the right rear wheel of the truck, and that just before the truck hit him Gary was "putting his hands up behind the truck, pushing on it." Gary's mother testified that on the next day this boy, in describing the accident, had told her that he had then told Gary "not to get near."

Harger had entered with this truck through a gate at the south end of these grounds. He testified that his foreman had told him to drive carefully in there, that teachers would be there until school was out, and that after that there was supposed to be a lady there who was hired by the city to look after the children; that as he entered the gate he saw several small boys around the gate, all of whom stood to one side as the truck passed; that he drove in a northwesterly direction at a speed of 2 or 3 miles an hour and stopped in the southwest quarter of the playground; that while so driving he looked carefully in front, to the left and to the right; that as he stopped he noticed several children near the building 50 or 60 feet east of the truck who were walking south toward the gate; that they were about opposite the cab of the truck and he saw them through the window of the east door; that as he proceeded they passed behind the truck on his right, and he couldn't see them; that when he stopped he engaged the mechanism raising the truck body, released the tail gate and started forward so as to spread the dirt; that as he proceeded at about 2 or 3 miles an hour he put his foot on the left running board and leaned out to watch the dirt as it came from the truck; that he was attempting to spread the dirt uniformly and this was the only way he could do so; that he was spreading the dirt at the extreme south end of the part to be filled and saw no other children on the south half of the playground as he prepared to spread the dirt; that when he had proceeded 10 or 12 feet he discovered the dirt was not spreading in sufficient depth and it became necessary to retrace his path; that he stopped, looked in front, to the left and to the right, and immediately started to back; that he then saw no children around the truck; that when he had backed about 3 feet he heard a yell from behind and to the right of the truck, and from a position where he could not see because of the raised bed of the truck; that he stopped

immediately, pulled forward about 3 feet and got out and ran to the rear of the truck; and that he then saw the injured boy "kind of sitting" a few feet to the east of the rear end of the truck.

It was brought out in the evidence that the governing board and officers of this school had established no special conditions or regulations regulating "public traffic" on these school grounds and had posted no signs giving notice thereof.

█ The appellants contend that the evidence discloses, as a matter of law, that each of the respondents was guilty of negligence. As to Harger and Haddock, it is argued that a driver is required to exercise greater caution in a school yard than under ordinary circumstances; that since no special regulations for "public traffic" on these grounds had been adopted section 603(c) of the Vehicle Code made all the provisions of that code relating to traffic on highways applicable to these grounds; that section 543 of that code prohibits the starting or backing of a vehicle on a highway until this can be done with reasonable safety; that section 671 requires the sounding of a horn when reasonably necessary to insure safe operation of a vehicle; that Harger here stopped his truck and then backed it without sounding his horn and without being able to see whether the children were behind his truck; and that this establishes negligence as a matter of law, citing *Taylor* v. *Oakland Scavenger Co.,* 17 Cal.2d 594 [110 P.2d 1044]; *Conroy* v. *Perez,* 64 Cal.App.2d 217 [148 P.2d 680].

No "public traffic" on these grounds was here permitted and section 603(c) could have no application to such a case as this where, on a single occasion, trucks necessary to the making of repairs or improvements to the grounds are permitted to enter for that purpose. █ Even if sections 543 and 671 of the Vehicle Code were otherwise applicable questions as to whether a movement could be made with reasonable safety, whether an audible warning was reasonably necessary, and as to proximate cause, would still remain. While it may be conceded that a greater degree of care was here called for the standard of care remained the same. Whether that standard was observed and met was still a question for the jury. As was said in *Conroy* v. *Perez,* 64 Cal.App.2d 217 [148 P.2d 680]: ". . . the determinative question the jury here was called upon to decide in considering the issue of the driver's negligence, was whether in the light of all the existing circumstances and conditions shown

by the evidence he exercised the care of a reasonably prudent person in backing up his truck.'' ■ The evidence discloses that a considerable amount of care was here exercised by other parties in the warnings given, and in the supervision afforded, and some by the driver in proceeding slowly and in looking around before he moved forward or moved backward. Whether this care was sufficient or whether more was called for under the circumstances was a question of fact. Seeing these boys near the building 50 or 60 feet to his right and walking toward the gate this driver might well assume that they were on their way to this gate to leave the grounds. There were no children playing in the south half of the grounds, a supervisor was in charge, and it does not necessarily appear that as a reasonable man he should have anticipated that these boys would suddenly change their course and come over and play behind the truck while it was in the process of dumping its load. It cannot be said, as a matter of law, that reasonable care required the posting of an extra man behind this truck during this operation, and whether a reasonable man in the position of this driver, under these circumstances, would have gotten out and gone behind the truck to look before retracing the 10 or 12 feet he had come and while the dirt was still pouring out of the truck, is purely a question of fact and not one of law.

As to the school district and Carpenter it is argued that they had created a hazardous condition on this school ground, that common prudence should have told them that at least some precautions on their part were necessary to protect the children, and that the record conclusively shows that they took no precautions whatever. The record demonstrates that they took a considerable amount of precaution and whether or not the amount of care was sufficient, under the circumstances, was a question of fact. As a result of the precautions taken the child arrived safely at home.

As to respondent Warren it is argued that the conclusion is inescapable that she was utterly remiss in discharging her duties, and that negligence on her part clearly appears as a matter of law. Again, questions of fact are presented and this contention is without merit.

■ It is also argued in this connection that, as a matter of law, the minor appellant could not be found guilty of contributory negligence because of his age, citing *Conroy* v. *Perez*, 64 Cal.App.2d 217 [148 P.2d 680] and *Gonzales* v.

*Davis,* 197 Cal. 256 [240 P. 16]. This contention cannot be sustained. (*Todd* v. *Orcutt,* 42 Cal.App. 687 [183 P. 963]; *Carrillo* v. *Helms Bakeries, Ltd.,* 6 Cal.App.2d 299 [44 P.2d 604]; *Mecchi* v. *Lyon Van & Storage Co.,* 38 Cal.App.2d 674 [102 P.2d 422]; *Walsh* v. *Van Tuyle,* 21 Cal.App.2d 302 [69 P.2d 189]; *Charves* v. *San Francisco-Oakland Terminal Railways,* 44 Cal.App. 221 [186 P. 154].) It is further argued that there is no evidence here showing contributory negligence on the part of this boy. The facts above summarized are a sufficient answer to this contention.

It is next contended that the following three instructions, given at the request of Harger and Haddock, were prejudicially erroneous.

■ "In determining whether the defendant John Thomas Harger was negligent, you must consider the fact, if true, that others had assumed responsibility for supervising the children on the school ground and keeping them away from the trucks. This fact, if true, did not relieve the truck driver from the duty to himself exercise ordinary care, but it is a circumstance to consider in determining what was ordinary care on his part, and if you find from the evidence that others did assume that responsibility, and that in view of that circumstance, John Thomas Harger drove, managed, operated, and controlled his truck as any ordinary prudent person would have driven, managed, operated and controlled it, then John Thomas Harger was not guilty of negligence."

■ "In determining the responsibility, if any, of the defendants John Thomas Harger and J. E. Haddock, Ltd., you are instructed that the mere fact that the truck was backed in the course of spreading the dirt was not in itself unlawful or negligent, and that the law did not necessarily require the truck driver to get out of his cab and walk around the truck before backing, or that outriders assist the driver in looking for children behind or to the right of the truck. All that was required in this connection was that he use ordinary care in backing the truck and in keeping a lookout for children in the vicinity of the truck."

■ "In determining whether the defendant John Thomas Harger was negligent, you must consider all of the circumstances under which he was driving, including the speed at which he was driving the dump truck, the nature of the work he was doing, the manner in which Gary LeRoy Smith conducted himself, and the arrangements, if any, which had been made between the parties to protect the children on the school

ground from the danger of the trucks. If you find from all the evidence and from the law as given to you in these instructions that the defendant John Thomas Harger conducted himself in all ways as a person of ordinary prudence under like circumstances would have conducted himself, and that the accident happened only because of negligence on the part of others, or because of the conduct upon the part of the child which could not have been anticipated in the exercise of ordinary care, then his failure to avoid the accident was not alone sufficient to constitute him negligent in this case.''

It is argued that the first of these instructions relaxed the degree of care required even if the truck driver did not know that others had assumed the responsibility mentioned, and that it excused the truck driver for violating the provisions of section 543 of the Vehicle Code. This instruction included the element as to the truck driver's knowledge that others had assumed the responsibility by the provision ''and that in view of that circumstance,'' and it appears, without conflict, that the driver did have knowledge of this circumstance. While it included the fact that others had assumed responsibility as one of the circumstances to be considered in deciding whether the driver had exercised ordinary care under the circumstances, it did not inform the jury that the degree of care was relaxed or inform the jury that the driver was relieved of his duty to exercise ordinary care. The instruction did not excuse the driver for violating section 543 of the Vehicle Code and did not mention that section. In another instruction given at the request of the appellants, the jury was instructed in the language of section 543 and told that a violation of that section was negligence as a matter of law.

It is argued that the last sentence of the second of these instructions is erroneous because section 543 of the Vehicle Code requires something more than the exercise of ordinary care while backing. If that section be considered applicable it still requires only ordinary or reasonable care in view of the circumstances then existing. It is argued that the third of these instructions was erroneous in telling the jury that it must consider the manner in which the minor conducted himself, in determining whether Harger was negligent. This was included merely as one of the circumstances and neither error nor prejudice appears.

Complaint is made of three instructions given at the request of the respondent School District and Carpenter. In the first of these the jury was told that the school district was

not chargeable with the negligence, if any, of Sallie E. Warren unless she was the servant, agent or employee of the district, and that "If you find from the evidence that prior to and at the time of the accident, Sallie E. Warren was working only for the City of Fresno in the playground and recreation department, you cannot hold the School District liable for her negligence, if any." It is argued that this quoted sentence unduly limited the school district's responsibility for her negligence to whether or not she was then working for the district; that the evidence discloses that she acted on the orders and directions of the school district and assumed responsibilities on its behalf; that even if she was only "working" for the city at the time, she was also serving the school district in a capacity apart from her work; and that the jury was entitled to base a verdict against the school district on the theory of *respondeat superior* because of her negligence. We are unable to find any evidence that Mrs. Warren was here acting under orders of the school district, or that she had assumed responsibilities on its behalf. Moreover, the complaint alleged that Mrs. Warren was the "agent, servant and employee" of the school district, and the case was tried on that theory and there was a failure of proof in this regard. At the request of the appellants the court gave some half dozen instructions along the same line although the words "working only" were not there used. Neither error nor prejudice appears in this connection.

In the other two instructions in this group the jury was told that the appellants had sued Carpenter and the school district on the theory and allegation that they so negligently managed, controlled and supervised this playground as to proximately cause the accident here in question; that in the absence of any duty on the part of said defendants to manage, control or supervise the playground immediately prior to and at the time of the accident there could be no recovery against either of said defendants; that if the jury should find that at the time in question the playground was under the sole management, control and superintendence of the city of Fresno and its playground department, and there was at the time no duty on the part of Carpenter or the school district to manage, control or supervise the playground and in connection therewith to control Gary Smith, then their verdict must be in favor of those defendants; and that no verdict could be returned against those defendants unless it was found that at the time those defendants had a duty to

manage, control or supervise Gary Smith on said playground. It is argued that these two instructions excluded, as a foundation of liability, the fact that the school district and Carpenter cannot escape the consequences of dangerous instrumentalities which they have caused to exist. This contention is without merit. The instructions were in accordance with the pleadings, and the question was left to the jury as to whether or not these respondents owed any duty, under the circumstances, which they had failed to perform.

It is next contended that the court erred in giving instructions relating to contributory negligence on the part of the minor appellant, both because the evidence did not warrant instructions on that doctrine and because it was improper to submit such an issue to the jury because of the age of the minor plaintiff. As heretofore pointed out, the matter was one which was properly left to the jury and no complaint is made that the instructions themselves were not correct.

Appellants' final contention is that at the request of the school district and Carpenter an instruction on the doctrine of unavoidable accident was given. The only objection made is that the evidence received did not warrant an instruction on that doctrine. This doctrine was set up as a special defense by these respondents, there was some evidence to sustain it as to them, and under such circumstances the giving of an instruction in accordance with that theory was proper. (*Graham* v. *Consolidated etc Co.*, 112 Cal.App. 648 [297 P. 617]; *Sitkei* v. *Ralphs Grocery Co.*, 25 Cal.App.2d 294 [77 P.2d 311].)

It cannot be held, as a matter of law, that the respective respondents were negligent and we find no reversible error in the instructions.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.