[Civ. No. 25035. Second Dist., Div. Three. Oct. 11, 1961.]

CHARLES O. HAND, JR., a Minor, etc., Respondent, v. THE CITY OF LOS ANGELES, Appellant.

Roger Arnebergh, City Attorney, Bourke Jones, Assistant City Attorney, Herbert Hargrave and Weldon L. Weber, Deputy City Attorneys, for Appellant.

Raymond C. Simpson and Robert W. Armstrong for Respondent.

FORD, J.—The city of Los Angeles has appealed from a judgment in favor of the plaintiff for damages suffered by him as the result of an accident on January 17, 1958.[1] At that time the plaintiff was 23 months old. He was struck by a road grader which was being used by the city in doing work upon the surface of a public street.

---

[1] In the notice of appeal, it is also stated that the city appeals from the denial of its motion for a new trial. Since that order is not appealable, the defendant's appeal therefrom must be dismissed. (*Armenta* v. *Churchill*, 42 Cal.2d 448, 451 [267 P.2d 303].)

The accident occurred at approximately 12:45 p. m. on a public street known as Welby Way in the North Hollywood section of the city of Los Angeles. During the course of the trial, the jury was taken to view the area in which the accident took place. The only testimony as to the occurrence of the accident was that of Estel B. Schmoe, the city employee who was operating its road grader. The vehicle was about 27 feet long and weighed 11½ tons. It had a scraping blade which was 12 feet long and was set ahead of the back wheels. The motor was in the rear. Mr. Schmoe drove the vehicle onto Welby Way a little after noon. He stopped the grader on the south side of the street just east of its intersection with Morella Street. At that point the dirt portion of Welby Way began. He placed the blade in position for the work to be done and then proceeded in an easterly direction on the south side of the street. The work consisted of "smoothing the street." He saw two boys, each about 6 years old. He told the boy on his left to stay out of the street and out of the way. He then turned to the boy on the other side of the street and said the same thing to him. He could not hear their replies because of the noise of the machine. He saw no other children; he did not see the plaintiff before the accident. After proceeding some distance down the street, he stopped the vehicle and proceeded to raise the blade to a higher position. His stop at that point could have been for a period of about four minutes. The complete work was to be done in three trips along the length of the street. He put the machine in reverse so that it could be backed up. At that time, the only child he saw was the boy he had previously seen on the north side of the street. He looked but saw no child on the south side of the street or to the rear of the vehicle. While there was a horn on the road grader, he gave no signal before he started to move in reverse gear. He moved backwards at a speed of about a mile and a half per hour. As to the impact, Mr. Schmoe testified that he backed up a distance of about half the length of the vehicle and then felt a bump; it was as though one wheel had run over a rock, but as he looked around he saw what had happened. The plaintiff was in the street and was "back of the blade," that is, between Mr. Schmoe and the blade. Mr. Schmoe described his position while the machine was moving backwards as follows: "Well, it's of a distinct habit of getting on my right knee, getting my right knee up on the seat and sitting down on my right knee, turn my knee under me in the seat, then I sit on

that and then that gives me a better view out of the back to see what I am going to do, where I am going." He further testified that in that position he could see some distance to the rear but that there was a blind spot "close up to the rear of the vehicle." As to that blind spot, he responded to questions as follows: "Q. Now, could you tell me what distance behind your grader you would have a blind space that would prevent you from seeing an object in the road that was between 30 and 36 inches high? A. That would be quite a distance. Q. Now, would this blind space that you have behind your machine be directly behind the machine, or do you have a certain amount of blind space to the sides as well? A. Mostly directly behind. . . . Q. You would have some blind space to the left and right rear, as well as to the direct rear, is that right? A. Yes."

When the accident occurred, section 400 of the Vehicle Code[2] was in part as follows: "The State, and every county, city and county, municipal corporation . . . owning any motor vehicle is responsible to every person who sustains any damage by reason of death, or injury to person or property as the result of the negligent operation of any said motor vehicle. . . ." In the present case, that section is to be considered in the light of subdivision (b) of section 453 of the Vehicle Code, the language of which was in part: "The provisions of this code shall not apply to public employees and publicly owned teams, motor vehicles and other equipment while actually engaged in work upon the surface of a highway, . . . but shall apply to such persons and vehicles when traveling to or from such work." ▮▮▮ The Supreme Court stated in *Yarrow* v. *State*, 53 Cal.2d 427, at page 441 [348 P.2d 687]: "The provisions of section 453, subdivision (b) seem to be clearly limited to the penal consequences of violations of Vehicle Code regulations and not to operate to relieve the public employee or the public employer from civil liability for personal or property damage caused by negligent operation of motor vehicles by public employees while so engaged."

▮▮▮ At page 442, the court further stated: "To the extent that the public employee is relieved from the *per se* consequences of violation of Vehicle Code regulations, it would seem that the public employer, either under the doctrine of *respondeat superior,* or under imputed liability as the owner of

---

[2] All Vehicle Code citations refer to the sections as numbered prior to the changes made by the Legislature in 1959.

the vehicles involved, should also be relieved from liability for *per se* negligence. (See *Raynor* v. *City of Arcata, supra,* 11 Cal.2d 113, 121-122 [77 P.2d 1054].) However, neither the public employer nor the public employee appears to be relieved from ordinary negligence in the operation of motor vehicles in connection with actual work upon the highway. . . . It might well be argued either that the public employer is relieved from *per se* negligence or imputed liability, and is still subject to common law negligence and its waiver of its common law immunity, or that it is liable for both *per se* negligence and common law negligence. The former appears to be the more reasonable solution, particularly in view of the right of subrogation given to the state under section 400.''

The appellant contends that, under the facts of this case, ''it was prejudicial error to refuse to instruct the jury upon the provisions of subdivision (b) of Section 453 and Section 543 of the Vehicle Code relieving the operator of the road grader from compliance with the requirements of the Vehicle Code while operating the road grader in the performance of work upon the surface of the public street.'' Section 543 was, as of the time of the accident, as follows: ''No person shall start a vehicle stopped, standing or parked on a highway nor shall any person back a vehicle on a highway unless and until such movement can be made with reasonable safety.''

At the request of the appellant, the court instructed the jury as follows: ''You are instructed that under the provisions of Section 400 of the Vehicle Code, the only negligence that can be charged against the defendant, City of Los Angeles, in this action is the negligent operation of a motor vehicle; namely, the City owned road grader. You are further instructed that the defendant, City of Los Angeles, in this case is not charged with the violation of any other provisions of the Vehicle Code in existence at the time of the accident herein considered. If, therefore, you find from the evidence that at the time of the accident in question, the City road grader was in fact being operated in violation of any other section of the Vehicle Code, such finding of fact alone will not justify your finding that the defendant, City of Los Angeles, was guilty of any negligent act.'' The essence of the appellant's argument is embodied in the following language: ''The vice of this instruction, in the absence of further instructions as requested by defendant, lies in the fact that it left the jury in the dark as to what the operator was not compelled to do under the Vehicle Code in backing the machine. The opera-

tion of motor vehicles is of such widespread, if not universal, activity of the public generally that it cannot be said that the jury was without any knowledge of the Vehicle Code and its provisions. Admittedly to what extent is of course unknown. But nowhere was the jury instructed as to the specific statutory duty which would have been violated in backing the machine if it were not exempted therefrom because of working on the surface of the highway. True, the jury was instructed on common law negligence, but no aid was given them in sorting out in their minds what the requirements of the Vehicle Code were, as distinguished from common law negligence to which they were to be limited in their deliberations.'' A number of instructions relating to the provisions of sections 453, subdivision (b), and 543 of the Vehicle Code were requested by the appellant but the trial court refused to give them to the jury.

 Cases may arise under the provisions of subdivision (b) of section 453 (the substance of which is now embodied in Veh. Code, § 21053) in which instructions will not be complete without reference to another section of the Vehicle Code in order to make it clear to the jury that the latter section is not applicable to the operation of the particular vehicle in question. However, the present case is not of that nature. The failure to instruct as to section 543 could not have caused prejudice to the appellant. The appellant concedes that the jury was instructed with respect to the concept of common-law negligence. As stated in *Smith* v. *Harger*, 84 Cal.App.2d 361, at page 371 [191 P.2d 25] : ''It is argued that the last sentence of the second of these instructions is erroneous because section 543 of the Vehicle Code requires something more than the exercise of ordinary care while backing. If that section be considered applicable it still requires only ordinary or reasonable care in view of the circumstances then existing.''

To have informed the jury of the content of section 543 and then to have instructed the jury that that section was not applicable to the facts of the present case would only have caused prejudicial confusion. This conclusion finds support in the reasoning of the court in *Hughes* v. *MacDonald*, 133 Cal.App.2d 74 [283 P.2d 360]. Therein it was said at pages 80-81 : ''However, it is doubtful whether section 543, *supra*, establishes any standard more specific than that of the care of a reasonably prudent man. . . . At any rate, even if the proposed instruction or one in the words of section 543 only, should have been given the omission would not require a re-

versal under article VI, section 4½ of the state Constitution. The essential issue as to the infant plaintiff was whether MacDonald in starting and backing up used the degree of care required under all the circumstances, among which the known presence of little children. The dangers of such a situation and the degree of care required must be clear ·to any juror and instructions could do little good. Moreover, good instructions were given on the test of the man of ordinary prudence under all the .circumstances, the duty of the operator of a vehicle to keep an intelligent and careful lookout and to become aware of that of which he would become aware by ordinary prudence and on the special care required as to young children. An instruction in the words of section 543 would not have added anything of practical value.''

The appellant contends that the ''evidence fails to show any common law negligence in the operation of the road grader.'' But, as said in *Yarrow* v. *State, supra,* 53 Cal.2d 427, at page 442: ''. . . the determination of what duty of care is owed to a particular plaintiff must be made upon the facts of the individual case.'' Section 453, subdivision (b) did not excuse the operator from taking such precautions as were required in the exercise of ordinary care. (*Cf. Rebmann* v. *Heesch,* 227 Iowa 566 [288 N.W. 695, 700].) Whether the care used by Mr. Schmoe met the applicable standard under the circumstances was a question of fact, the determination of which was within the province of the jury. (See *Smith* v. *Harger, supra,* 84 Cal.App.2d 361, 369; cf. *Waid* v. *Smith,* 87 Cal.App.2d 32, 35 [195 P.2d 862] ; *Langham* v. *Norlander,* 58 Cal.App.2d 543 [137 P.2d 29].) Since the determination of the jury finds substantial support in the evidence, this court is not free to interfere therewith under the law governing appellate review.

The attempted appeal from the order denying the appellant's motion for a new trial is dismissed. The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 6, 1961.