[Sac. No. 5456. In Bank. Dec. 17, 1941.]

TREASURE ISLAND CATERING CO., INC. (a Corporation), Respondent, v. STATE BOARD OF EQUALIZATION, Appellant.

182

Earl Warren, Attorney General, and H. H. Linney and Adrian A. Kragen, Deputies Attorney General, for Appellant.

Oscar Samuels and Tevis Jacobs for Respondent.

Loeb & Loeb, Leon H. Levi and Frank M. Keesling, as Amici Curiae, on behalf of Respondent.

THE COURT.—Appeal by the defendant from a judgment in favor of the plaintiff awarding a tax refund in the sum of $10,964.96.

The sole question here presented for determination relates to the construction to be placed on section 5 (e) of the Retail Sales Tax Act (Stats. 1933, p. 2599, as amended; Deering's Gen. Laws, 1937, Act 8493).

During the construction and operation of the Golden Gate International Exposition, the plaintiff catering corporation operated several sandwich stands, or booths, on Treasure Island. Four booths were located within the entrances to

exposition buildings and several others were placed throughout the grounds at allocated places. The plaintiff sold only frankfurter (commonly referred to as "hot dog") and hamburger sandwiches, together with coffee, milk, ale and beer. It paid without protest the retail sales tax measured by the sales price of the beverages which it sold, but did not include therein the amount of the sales price of frankfurter and hamburger sandwiches, except those sold at one booth in the exposition grounds where customers were seated at tables provided by the plaintiff for their accommodation. The remaining sales of hamburger and frankfurter sandwiches—which are the subject of this action—were made at the other booths on the grounds, each of which was adjacent to main roadways, paths or walks, and at the four booths located in the entrance halls of the buildings. Each of those booths occupied a space about ten feet square, and neither tables nor chairs were provided for customers. The sandwiches were prepared for consumption, each wrapped in a paper napkin and handed to the purchaser over a ledge, or shelf, which formed the top of the outer walls of the booths.

After the close of the exposition, the defendant assessed an additional retail sales tax against the plaintiff, based on the sales of sandwiches at the booths and in the manner last described. Such assessment covered sales made during the period from November 21, 1937, to October 30, 1939. The plaintiff paid the additional taxes under protest and the present action was instituted to secure a refund thereof. By the terms of the judgment the plaintiff was awarded a refund of 82½ per cent of the tax which it had thus paid under protest.

Prior to July 1, 1939, section 5 of the Retail Sales Tax Act provided in part as follows: "There are hereby specifically exempted from the provisions of this act and from the computation of the amount of tax levied, assessed or payable . . . (e) The gross receipts from the sale of food products for human consumption. . . . 'Food Products' does not include . . . the furnishing, preparing or serving for a consideration of any tangible personal property consumed on the premises of the person furnishing, preparing or serving such tangible personal property."

With respect to sales of sandwiches by the plaintiff prior to July 1, 1939, the paramount question is whether such

"tangible personal property" was consumed "on the premises" of the seller. The trial court found the premises of the plaintiff were limited by the outer walls of each of the booths; that no purchaser was given access to the booths, nor were accommodations provided therein for the consumption of food or beverages by such purchasers; that 82½ per cent of the food products sold prior to July 1, 1939, was sold for consumption, and was consumed, off the premises; and that the remaining 17½ per cent was consumed "in the immediate proximity" of the booths. The finding last referred to was based on evidence that approximately 17½ per cent of plaintiff's customers leaned against the walls of the booths or permitted bottles or paper cups to rest on the ledges· which formed the top of such walls.

The defendant contends the trial court erred in its finding that plaintiff's premises were limited by the outer walls of the booths, and that it should have found that sandwiches consumed "within the immediate vicinity of the outside booths or within the building in the case of inside booths" were "consumed on the premises of plaintiff." The word "premises" has been variously defined. In *Ballsun v. Star Petroleum Co.*, 105 Cal. App. 679, 687 [288 Pac. 437], the court said: " . . . the interpretation to be given to the word 'premises' depends entirely upon its use in the instrument where it appears, and the subject matter to which it refers." With respect to the present case,· the evidence shows that as to about 82½ per cent of the sales some of the customers who purchased sandwiches at the booths located on the grounds walked to nearby benches and seated themselves, or remained standing in the vicinity of the booths while consuming their sandwiches, but that many others walked away through the grounds carrying their purchases with them. The benches and walks which were so utilized by plaintiff's customers were used in common with the general public patronizing the exposition. As to the booths located inside the buildings the evidence shows that some of the purchasers consumed their sandwiches on the verandas of the buildings while the balance of them carried their purchases out of the buildings into the grounds. It further appears that by agreement with the exposition company plaintiff's rights of occupancy and control of the grounds or buildings as a concessionaire were limited to and confined

within the limits of its concession spaces, and that the roadways, paths and walks of the exposition grounds, as well as the entrance corridors of the buildings, wherein were located four of plaintiff's booths, were under the exclusive control of the exposition company. No relationship existed between the plaintiff and the exposition company that would have made any areas outside the confines of the booths a part of the "premises" of the plaintiff concessionaire. As a condition of taxability the statute required that the food be "consumed *on* the premises" of the seller, and not merely "near to" or "in the neighborhood of" the retailer's premises (*Alameda Macadamizing Company* v. *Williams,* 70 Cal. 534, 543 [12 Pac. 530]) ; and in the absence of a legislative definition of the meaning and scope of the term "on the premises," as used in the act, we may not accept the defendant's contention that by the use of such term it was the legislative intent to include an area over which plaintiff not only had no control but which was intended by the exposition authorities to be for the use of the general public and not merely for the accommodation of plaintiff's customers. (*Doherty's Case,* 294 Mass. 363 [2 N. E. (2d) 186, 187, 105 A. L. R. 576].) There was ample evidence to support the trial court's findings that at least 82½ per cent of plaintiff's customers used such areas in consuming purchases made at the booths of plaintiff prior to July 1, 1939, and the finding in that regard may not be disturbed.

With respect to the period following July 1, 1939, by an amendment to section 5 (e) of the act, which became effective as of the date last mentioned (Stats. 1939, p. 2173), the exemption of the sales of "food products" was not applicable to "meals served on or off the premises of the retailer" nor to "foods furnished, prepared or served for consumption at tables, chairs or *counters* or from trays, glasses, dishes *or other tableware* provided by the retailer." (Emphasis added.)

The trial court found that the sandwiches prepared and sold by plaintiff after July 1, 1939, did not constitute "meals" and that plaintiff did not "serve" any meals. The defendant contends the finding was erroneous; that a sandwich is *per se* a "meal"; that even if, ordinarily, sandwiches are not "meals" they become such when consumed with beverages; also that plaintiff's method of operation and sale

constituted the "serving" of a meal. Those contentions are based primarily on a statement made in *Sandelin* v. *Collins*, 1 Cal. (2d) 147, 156 [33 Pac. (2d) 1009, 93 A. L. R. 956], which is as follows: "Under our modern system of living a sandwich served in good faith as a meal would constitute a meal as contemplated by law." The court was there construing the State Liquor Control Act of 1933 (since repealed) in the light of the question whether a sandwich, when served with wine or beer, was a meal furnished in good faith as contemplated by the Constitution and the statute there involved. The court also said that the question whether, within the import of the statute, a sandwich constituted a "meal" was in each instance primarily a question of fact, and that a general rule of law could not be laid down in all cases with reference to a question so intimately connected with and controlled by individual tastes, conditions of diet and circumstances. The statute here is silent as to what was intended by the legislature in the use of the word "meal." It may be that in some circumstances and for certain individuals a single sandwich might be said to constitute a "meal," whether served with or without a beverage. However, we do not think the legislature intended a restricted meaning to be applied to the word as used in the statute here under consideration, nor that in amending the section it was not cognizant of certain well recognized distinctions between the type of food prepared for consumption which is known as a "sandwich" and that embraced by the term "meal." The generally accepted concept of a meal is that it not only consists of a larger quantity of food than that which ordinarily comprises a single sandwich, but that it usually consists of a diversified selection of foods which would not be susceptible of consumption in the absence of at least some articles of tableware and which could not conveniently be consumed while one was standing or walking about. A "hot dog" or hamburger sandwich is the type of food frequently offered for sale to and desired by persons who wish to eat something while walking about. It is not the type of food generally ordered by a person who patronizes a hotel, restaurant or other public eating establishment with the intention of securing a "meal." Nor do we agree with defendant's contention that, in any event, where a beverage is consumed with a sandwich it neces-

sarily amounts to a "meal." The questions whether the sandwiches sold by plaintiff constituted "meals"—where consumed with or without a beverage—and whether, within the import of the statute, plaintiff "served" meals, were primarily for the trial court. It may not be said that one has "served" a meal who merely prepares a sandwich for consumption, wraps it in a paper napkin and hands it to a purchaser without offering any facilities for its consumption on the premises, and with the intention that it be consumed elsewhere.

■ The defendant also contends that the sale of sandwiches by plaintiff after July 1, 1939, came within the provisions of section 5 (e), which excluded from the exemption "foods furnished, prepared or served for consumption at . . . *counters* or from trays, glasses, dishes, or other *tableware* provided by the retailer." (Emphasis added.) It is contended that the ledges which formed the top of the walls of the booths constituted "counters" within the meaning of the statute. As heretofore stated, the finding of the trial court was that the purchasers of 17½ per cent of the food products sold by plaintiff since July 1, 1939, utilized the ledges as counters by leaning against them while consuming their purchases, or by allowing a beverage purchased with their food to rest thereon; and that the remaining 82½ per cent of such food products sold after July 1, 1939, "was not furnished, prepared, sold or served for consumption, nor consumed, at . . . counters." The evidence shows that the ledges were not intended to be used as "counters" on or at which the sandwiches might be consumed, due to the fact that a continued or general utilization of the ledges for such purpose would have interfered with the accessibility to plaintiff's booths by prospective customers. No stools were installed along the outer walls of the booths such as are usually provided for the convenience of purchasers when food is sold or served for consumption at "counters." The evidence further shows that the ledges had a width of only eight inches; that due to the height of the walls none of the ledges was less than fifty inches from the floor, or ground—some of them being as high as fifty-six inches from the base of the walls; and that due to the height and narrowness of such ledges it was inconvenient, if not impracticable, for the ledges to be used as counters. The fact that in a few in-

stances the ledges were so utilized cannot place the remaining 82½ per cent of the sandwiches sold by plaintiff—which were carried away from the premises—in the classification of "food products" which were "furnished, prepared or served for consumption at . . . counters . . . provided by the retailer."

The defendant further argues that a napkin is "tableware" and that the use of paper napkins by the plaintiff in wrapping the sandwiches constituted the providing of "tableware" within the meaning of the statute. However, the trial court, on sufficient evidence, found that the paper napkins "were furnished as, and constituted a convenience for handling or carrying said sandwiches." Moreover, the plaintiff points out that under the rule of *ejusdem generis* the word "tableware" as used in section 5 (e) must be construed to be of the same general character as the words which precede it in the statute. (*Hart* v. *City of Beverly Hills*, 11 Cal. (2d) 343, 347 [79 Pac. (2d) 1080]; *City of Los Angeles* v. *Superior Court*, 2 Cal. (2d) 138, 140 [39 Pac. (2d) 401]; 23 Cal. Jur. 755; section 3534, Civil Code.) The language in which the word is here used is: " . . . trays, glasses, dishes, *or other tableware* . . . " (Emphasis added.) Therefore, even if it be conceded that ordinarily a table napkin may be said to constitute an article of "tableware" —applying to section 5 (e) the rule just referred to, the article contemplated by the word "tableware" must be deemed to be one which is, in general, of the same degree of permanency as that possessed by the other objects enumerated immediately before it in the statute. Under the facts of this case, it is beyond question that a mere paper napkin, which was intended to be discarded after one use, would not be an article of "tableware" such as is contemplated by the statute here involved.

In view of the conclusion reached, as hereinbefore outlined, it is unnecessary to consider defendant's contention that as a condition of recovery it was incumbent on plaintiff to have apportioned its sales as in part taxable as meals, and in part not taxable because not served as meals.

The judgment is affirmed.

Mr. Justice Traynor did not participate herein.