[L. A. No. 22902. In Bank. Mar. 5, 1954.]

AURELIA ARMENTA et al., Appellants, v. DALE CHURCHILL et al., Respondents.

Victor C. Rose and Alfred M. Klein for Appellants.

Parker, Stanbury, Reese & McGee and Raymond G. Stanbury for Respondents.

SPENCE, J.—Plaintiffs, the widow and children of Amador Armenta, Sr., brought this action to recover damages for his wrongful death. The deceased, while working on a road-paving job, was killed when a dump truck backed over him. The truck was operated by defendant Dale Churchill, whose wife and codefendant, Alece Churchill, was the registered owner. The jury found for defendants and judgment was entered in their favor. From such judgment and the order denying their motion for a new trial, plaintiffs have appealed. Since the order is not appealable (Code Civ. Proc., § 963; *Pipoly* v. *Benson*, 20 Cal.2d 366, 368 [125 P.2d 482, 147 A.L.R. 515]), plaintiffs' appeal therefrom must be dismissed.

There is no dispute as to the facts. Plaintiffs contend, however, that the trial court committed prejudicial error in instructing the jury and in excluding certain evidence. Their objections are in part well taken; and accordingly the judgment must be reversed.

The fatal accident happened on Tyler Avenue, a county highway in Los Angeles County, where an 8-foot strip of the street was being resurfaced with "black top," an asphaltic

pavement. A mobile machine known as a "Barber-Greene" was used to distribute the paving material. This machine, in continuous motion, moves forward about 25 feet per minute and needs to be fed a constant supply of paving material. Several trucks were required to bring the necessary supply from a distance of about 6 miles. According to the customary procedure, each truck, taking its turn, would be placed in position so that its rear would face the front of the Barber-Greene, towards which the truck would then back and deposit the paving material. Dale Churchill, driving one of the trucks down Tyler Avenue, passed the Barber-Greene facing in that same direction and stopped 75 to 100 feet in front of it. At that time there was another truck unloading. As the Barber-Greene advanced slowly, Churchill kept his truck moving so as to be 75 to 100 feet in front of it, and when the other truck left, he commenced backing toward the Barber-Greene at about 2 miles per hour. The deceased was a "stringman," whose duty was to stretch a cord in front of the Barber-Greene as a guide for laying out the pavement in a straight course. He was so engaged, standing with his back to Churchill's moving truck, when he was struck and run over at a point some 30 to 40 feet in front of the Barber-Greene and 4 feet from the edge of the paving area. At the time Churchill was partly sitting in the driver's seat of the truck, with his right foot on the throttle and his left on the running-board, guiding the truck and looking to the rear. From such position he could not see the right rear of the truck, which was the part that struck and ran over the deceased. The Barber-Greene was then operating with a great deal of noise, considerably more than that produced by the truck. Churchill at no time blew his horn while backing his truck.

Plaintiffs first contend that the court erred by refusing to receive in evidence, and to include in its instructions to the jury, Construction Safety Order 1753(b) of the California Administrative Code. Said order reads: "Trucks used to haul dirt, rock, concrete or other construction material shall be equipped with a horn, bell or whistle on both the front and rear ends, or with a horn capable of emitting a sound audible under normal operating conditions from a distance of not less than two hundred feet (200′) in the rear of the truck, *provided the warning will be sounded while the truck is backing up.*" (Emphasis added.) Plaintiffs maintain that Churchill's violation of this safety order through failure to sound his horn

as he backed the truck constituted negligence *per se* and so was material evidence bearing on the issue of defendants' liability. Defendants argue that the regulation was properly excluded from the jury's consideration for these reasons: (1) It is unreasonably discriminative in that it applies only to trucks hauling certain materials; (2) it is fatally uncertain in that it does not define the term "construction material"; and (3) it invades the field of legislation which is preempted by section 671, subdivision (b) of the Vehicle Code. There is no merit in these objections.

Safety Order 1753(b) is contained in title 8 of the California Administrative Code, entitled "Construction Safety Orders," applicable to "the excavation, construction, alteration, repairing, renovating, removal or wrecking of buildings *or other structures*." (Emphasis added.) (Cal. Admin. Code, tit. 8, art. 2, § 1506.) The repair and resurfacing of a highway would come within the phrase "or other structures" (*State ex rel. West Virginia Sand & Gravel Co. v. Royal Indem. Co.,* 99 W.Va. 277 [128 S.E. 439, 443]; *State for Use of E. I. Du Pont De Nemours & Co. v. Coda,* 103 W.Va. 676 [138 S.E. 324, 328]; *City of Rock Island v. Industrial Com.,* 287 Ill. 76 [122 N.E. 82, 83]) as a construction project affixed to real property. (See *Rae v. California Equipment Co.,* 12 Cal.2d 563, 567-568 [86 P.2d 352].) The order was issued by the Division of Industrial Safety in conformity with the provisions of sections 6312 and 6500 of the Labor Code, being a measure for the protection and safety of workmen in their places of employment. It is directed to trucks in their hauling of construction materials and recognizes the need for specific rules to cover their operations on jobsites. Workmen, as they pursue their assigned tasks amid noisy surroundings, cannot be expected to keep constantly on the lookout for backing trucks. All trucks used for the specified purposes are subject to the terms of the safety order with regard to the prescribed equipment and required use of a horn, bell or whistle while backing. The Constitution does not prohibit legislative classification. "[T]he mere production of inequality which necessarily results to some degree in every selection of persons for regulation does not place the classification within the constitutional prohibition." (*People v. Western Fruit Growers,* 22 Cal.2d 494, 506 [140 P.2d 13].) There is nothing unreasonable or arbitrary in this safety order which would require us to hold uncon-

stitutional such classification. (*Martin* v. *Superior Court,* 194 Cal. 93, 100-101 [227 P. 762].)

 Nor is Safety Order 1753(b) in its reference to "construction material" too vague and uncertain to enable a person to know what is thereby included. (See *In re Peppers,* 189 Cal. 682, 688 [209 P. 896].) The order must be reasonably interpreted (Civ. Code, § 3542; 23 Cal. Jur., § 104, p. 722) and, so far as possible, given a construction which will render it valid rather than void. (23 Cal. Jur., § 132, p. 757; *Medical Finance Assn.* v. *Wood,* 20 Cal.App.2d Supp. 749, 753 [63 P.2d 1219].) It is a regulation expressly applying to trucks hauling "dirt, rock, concrete or other construction material," an enumeration of particular items commonly identified with heavy, substantial building operations. Under the doctrine of *ejusdem generis,* the concluding words "other construction material" would take color from the preceding listing and be limited to substances ordinarily associated in that same class. (Civ. Code, § 3534; 23 Cal.Jur., § 130, p. 755; *Treasure I. C. Co.* v. *State Board of Equalization,* 19 Cal.2d 181, 188 [120 P.2d 1].) As was said in *Smulson* v. *Board of Dental Examiners,* 47 Cal.App.2d 584, at page 587 [118 P.2d 483]: "It is not required that even a penal statute, to be valid, have that degree of exactness which inheres in a mathematical theorem." So here the safety order may be readily understood, and no difficulty should be encountered in its practical application.

 Section 671, subdivision (b), of the Vehicle Code provides: "The driver of a motor vehicle *when reasonably necessary to insure safe operation* shall give audible warning with his horn. Such horn shall not otherwise be used." (Emphasis added.) Defendants argue that this section covers the entire subject of the necessity for sounding of a horn when traveling on a highway, leaving no room for any additional regulation in that field. In support of their position they cite *Pipoly* v. *Benson,* 20 Cal.2d 366, 373 [125 P.2d 482, 147 A.L.R. 515], where a local ordinance which entered "a field intended to be occupied fully by the state legislation" was held invalid. But the situation here is clearly distinguishable. Sections 6312 and 6500 of the Labor Code expressly recognize the need for safety measures for the protection of workmen at their places of employment; and pursuant to the express authority found in those sections, the Division of Industrial Safety issued Safety Order 1753(b) regulating truck backing

operations and declaring, in effect, that the sounding of the warning was "reasonably necessary to insure safe operation" during such backing. ■ The codes must be regarded as blending into each other and forming a single statute. (23 Cal.Jur., § 169, p. 791; *In re Porterfield*, 28 Cal.2d 91, 100 [168 P.2d 706, 167 A.L.R. 675].) ■ The safety order was but a more specific safety requirement imposed under the authority of the cited sections to take care of the exigencies of a particular situation; and it was complementary to, rather than inconsistent with, section 671, subdivision (b), of the Vehicle Code. (Gov. Code, § 11374; 2 Cal.Jur.2d, § 71, p. 143 et seq.)

■ Plaintiffs therefore must be sustained in their contention that the trial court committed prejudicial error in rejecting their offer in evidence of Safety Order 1753(b) and in refusing to instruct the jury thereon. The safety order, of which courts take judicial notice (*Martin* v. *Food Machinery Corp.*, 100 Cal.App.2d 244, 251 [223 P.2d 293]), established a minimum standard of care in the safe operation of defendants' backing truck (Lab. Code, § 6318; *Campbell* v. *Fong Wan*, 60 Cal.App.2d 553, 558 [141 P.2d 43]); its violation would constitute negligence *per se* (*Hopper* v. *Bulaich*, 27 Cal.2d 431, 435 [164 P.2d 483]; *Pierson* v. *Holly Sugar Co.*, 107 Cal.App.2d 298, 302 [237 P.2d 28]); and the question of whether such negligence proximately contributed to the deceased's death would be one of fact for the jury. (*Rae* v. *California Equipment Co., supra*, 12 Cal.2d 563, 570.)

■ The court likewise erred in failing to instruct the jury in the terms of section 543 of the Vehicle Code, as requested by plaintiffs. That section provides: "No person shall start a vehicle stopped, standing or parked on a highway nor shall any person back a vehicle on a highway unless and until such movement can be made with reasonable safety." As one of their theories of negligence, plaintiffs maintained that defendant driver Churchill should not have backed the truck at the jobsite unless and until he could do so "with reasonable safety." It is true that the jury was instructed that the driver of a motor vehicle must sound the horn "when reasonably necessary to insure safe operation." (Veh. Code, § 671, subd. (b).) But that did not cover the point of plaintiffs' position that regardless of whether or not the horn was sounded, the truck should not have been moved at all unless it could be done "with reasonable safety." The general tenor of the instructions assumed that the accident happened

on a highway, and this term was defined in the instructions in the language of section 81 of the Vehicle Code. Section 543 was relevant to the disputed issue of negligence in the backing of the truck at such place (*Wood* v. *Moore,* 64 Cal. App.2d 144, 148 [148 P.2d 91] ; *Smith* v. *Harger,* 84 Cal.App. 2d 361, 371 [191 P.2d 25].) It placed upon the driver Churchill the duty of ascertaining whether or not it was reasonably safe to back the truck under all the circumstances. Churchill, according to his own testimony, could not see what was behind the right rear of the truck, which was the part that struck the deceased, and he made no attempt to investigate the situation before backing. Under all the circumstances, it became a question of fact for the jury to determine whether Churchill backed the truck at a time when it was reasonably safe to do so; and if not, whether his action was the proximate cause of the accident. Accordingly, section 543 vitally affected plaintiffs' claim of negligence in Churchill's operation of the truck, and it was prejudicial error for the court to refuse plaintiffs' instruction covering the provisions of that section.

Before considering further points discussed by the parties, it is necessary to note the state of the pleadings and the issues thereby presented. The amended complaint was drawn in two counts. The first charged negligence on the part of Dale Churchill as driver of the truck, acting as agent and employee of his wife, Alece Churchill, and within the scope of his agency and employment. The second incorporated all the allegations of the first count, and contained the added allegations that Alece Churchill was herself negligent in entrusting the truck to her husband, she having actual knowledge that he was a careless, negligent and reckless driver. As to the first count, defendants admitted in their answer the agency and scope of employment of Dale Churchill; but as to the second count, they denied the added allegations. During the trial plaintiffs offered, in support of the added allegations of the second count, evidence to show that Dale had been found guilty of some 37 traffic violations, including a conviction of manslaughter, and that Alece had knowledge of these facts. Defendants objected to the offered evidence because it was directed to an issue which had been removed from the case by the pleadings. After the objection was sustained, defendant Alece Churchill again admitted her liability for all damages sustained by plaintiffs in the event that her husband was found to be liable.

Plaintiffs contend that the offered evidence should have been admitted. Defendants insist that the objection was properly sustained upon the authority of *Fuentes* v. *Tucker*, 31 Cal.2d 1 [187 P.2d 752]. That was an action by the parents for the death of minor sons. Defendant admitted liability in his answer. Nevertheless plaintiffs, over defendant's objection, were permitted to prove the circumstances of the accident, including the facts that defendant was intoxicated and that the children were thrown 80 feet by the force of the impact. In an action for wrongful death of minor children, the manner in which the accident occurred, the force of the impact, and the intoxication of defendant could have no bearing on the issue of damages. In disapproving the admission of such evidence, the court said: "Evidence which is not pertinent to the issues raised by the pleadings is immaterial, and it is error to allow the introduction of such evidence." (*Fuentes* v. *Tucker, supra,* p. 4.) Therefore the question presented here is whether there was any material issue remaining in the instant case to which the offered evidence of some 37 traffic violations, including a manslaughter conviction, would be relevant.

 It is true that defendant Alece Churchill's admission of vicarious liability as the principal for the tort liability, if any, of her husband was not directly responsive to plaintiffs' added allegations of fact contained in the second count relating to her personal negligence. But the only proper purpose of the allegations of either the first or second count with respect to Alece Churchill was to impose upon her the same legal liability as might be imposed upon Dale Churchill in the event the latter was found to be liable. Plaintiffs could not have recovered against Alece Churchill upon either count in the absence of a finding of liability upon the part of Dale Churchill; and Alece had admitted her liability in the event that Dale was found to be liable. Plaintiffs' allegations in the two counts with respect to Alece Churchill merely represented alternative theories under which plaintiffs sought to impose upon her the same liability as might be imposed upon her husband. Upon this legal issue concerning the liability of Alece Churchill for the tort, if any, of her husband, the admission of Alece Churchill was unqualified, as she admitted that Dale Churchill was her agent and employee and that he was acting in the course of his employment at the time of the accident. Since the legal issue of her liability for the alleged tort was thereby removed from the case, there was

458

no material issue remaining to which the offered evidence could be legitimately directed. We therefore conclude, upon the authority of the Fuentes case, that the trial court properly sustained defendants' objection to the offered evidence. Cases cited by plaintiffs involving the right to plead inconsistent causes of action (e.g. *Martinelli* v. *Luis*, 213 Cal. 183, 185 [1 P.2d 980]; *Horstman* v. *Krumgold*, 55 Cal.App.2d 296, 297 [130 P.2d 721]; *Wells* v. *Brown*, 97 Cal.App.2d 361, 364 [217 P.2d 995]) or to introduce evidence in the light of an ambiguous or confused admission (*Martin* v. *Miqueu*, 37 Cal. App.2d 133, 135-136 [98 P.2d 816]) are not in point.

There was no error in the court's refusal to admit into evidence a certified copy of Dale Churchill's chauffeur's license, which authorized him to operate a motor vehicle of not over 6,000 pounds, unladen weight. The truck involved here weighed, unladen, 13,900 pounds. The Department of Motor Vehicles is empowered to issue either a general chauffeur's license or a restricted chauffeur's license, the latter indicating the type of vehicle or combination of vehicles the licensee is licensed to operate. (Veh. Code, §§ 272, 273.) The applicant "may state the type of vehicle or combination of vehicles he desires to operate" (*Ibid*, § 265), and the department shall issue to an applicant found to be entitled thereto an operator's or chauffeur's license "as applied for" (§ 272). Plaintiffs contend that the fact that Churchill held a license to operate a vehicle with an unladen weight of only 6,000 pounds is evidence of a determination by the Department of Motor Vehicles that it would be unsafe for him to operate a vehicle of greater weight, and that such supposed ruling by the department would be some evidence of negligence.

Preliminarily it should be noted that this contention is based upon an assumption of fact which is not justified. There was no evidence, and no offer to prove, that Churchill was not issued exactly the type of license for which he applied, or that the department had restricted him in any way contrary to his request. But regardless of such erroneous assumption, we find no merit in plaintiffs' contention. In *Strandt* v. *Cannon*, 29 Cal.App.2d 509, at page 518 [85 P.2d 160], it was said that "the operator's negligence is to be determined by the facts existing at the time of the accident, and whether the operator had a license to operate an automobile under the laws of this state is immaterial unless there is some causal relationship between the injuries and the failure to have a license. . . ." Like the total absence of any

license, a restricted license is material to the issue of negligence only in the event that there is a causal connection between the fact of such restriction and the happening of the accident. (*Poe* v. *Lawrence*, 60 Cal.App.2d 125, 131 [140 P.2d 136]; *cf. Roos* v. *Loeser*, 41 Cal.App. 782, 786 [183 P. 204].) No such causal relationship appears here. There is no possibility that this accident would not have happened regardless of the type of license which might have been issued to Churchill. It occurred while a truck was being backed at a speed of 2 miles per hour. It is therefore apparent that the restriction as to weight is not here material to the issue of Churchill's negligence, if any, as he backed his truck into the deceased.

Finally there appears to be no prejudicial error in the court's refusal to admit into evidence a photograph of the deceased, taken during his lifetime. (*Westberg* v. *Willde*, 14 Cal.2d 360, 371 [94 P.2d 590].)

As the record has been above reviewed, the court's error in the refusal of the noted instructions and in the rejection of evidence of the safety order prejudiced plaintiffs in the presentation of their case to the jury, constituting cause for reversal of the judgment. (Const., art. VI, § 4½.)

The purported appeal from the order denying a new trial is dismissed. The judgment is reversed.

Gibson, C. J., Shenk, J., and Traynor, J., concurred.

CARTER, J.—I concur in the judgment of reversal and generally with the reasoning of the majority opinion, but I wish to point out that the holding therein that evidence showing that Dale Churchill had been guilty of some 37 traffic violations including a conviction of manslaughter was inadmissible because defendant Alece Churchill had admitted her liability for all damages sustained by plaintiff in the event that her husband was found to be liable, is directly contrary to the holding of the majority of this court in *Hamasaki* v. *Flotho*, 39 Cal.2d 602 [248 P.2d 910], decided October 9th, 1952, where it was held that the issues of liability and damages were inseparable and that the judgment should be reversed with directions that the case be retried on the issues of both liability and damages even though the trial court had granted a new trial to plaintiff on the issue of damages only. In my dissent in that case I pointed out that the holding of the majority was directly in conflict with *Fuentes* v. *Tucker*, 31

Cal.2d 1 [187 P.2d 752]. It appears that the majority is now relying upon the last mentioned case without even citing the Hamasaki case. An analysis of the comparative reasoning in the Fuentes case and the case at bar with the Hamasaki case makes it clear that the rule for which the majority stand is that where evidence of liability might have the effect of bringing about or increasing an award of damages it is not admissible but if it has the effect of reducing or defeating an award of damages it is admissible. This line of reasoning is out of harmony with my concept of how the law should be administered to achieve equal justice.

SCHAUER, J., Dissenting.—It is my view that the opinion prepared for the District Court of Appeal by Presiding Justice Shinn, and concurred in by Justices Wood (Parker) and Vallée (reported in (Cal.App.) 258 P.2d 861), adequately discusses and correctly resolves all issues of law presented by this appeal. For the reasons therein stated I would affirm the judgment.