[Civ. No. 19907. First Dist., Div. Three. Jan. 17, 1962.]

THOMAS MILLOWAY, Plaintiff and Respondent, v. GRIFFIN BUILDING MATERIAL COMPANY, Defendant and Appellant.

Grunsky & Pybrum and Donald L. Grunsky for Defendant and Appellant.

Morgan, Beauzay & Holmes for Plaintiff and Respondent.

DEVINE, J.—We have but one question to answer in this case in order to arrive at our decision, namely, does a certain safety order of the Division of Industrial Safety (Cal. Admin. Code, tit. 8, § 1576, subd. (e)) apply to a flat-bed truck which is carrying a load of fabricated house frames?

Plaintiff, the respondent, was construction superintendent of a housing subdivision construction project. On June 22, 1959, an employee of Griffin Building Material Company, the appellant, drove a flat-bed, three-axle truck and a two-axle trailer to the site of the housing project, the truck carrying two frame loads and the trailer two frame loads, each frame load being sufficient for a single house. The trailer was driven onto a vacant lot which was part of the housing project but on which construction had not yet started, and was unlocked from the truck. The truck was then driven to a lot where the frames were required, was unloaded, and was driven back to the trailer for the purpose of transferring the frames from the trailer to the truck. Plaintiff was helping in the process of removing the frames from the one vehicle to the other by manipulating rollers at the back end of the trailer with an iron bar. As he was locking one of the rollers, the truck driver backed the truck, squeezing plaintiff's hand between the truck and the trailer and causing severe and permanent injury to the hand.

The issues in the case, as defined by the pretrial order, were negligence, proximate cause, contributory negligence and damages. The jury found a verdict for plaintiff in the amount of $27,368.38. Defendant appeals upon the sole ground that it was prejudicial error for the judge to instruct the jury on violation of section 1576, subdivision (e) of title 8 of the California Administrative Code, with the usual direction that if a party to the action violated the industrial safety order, a presumption arises that he was negligent, and with the usual and correct direction as to how the presumption might be overcome and as to the necessity that a violation be a proximate cause of the injury. There is no doubt that if

the giving of the instruction was error, it was prejudicial, because there was no contention on the part of the appellant that if the safety order did apply it was not violated. Nor was there any attempt on the part of the appellant to show circumstances which would excuse violation, if there were such violation. It was appellant's contention as it is on appeal, that the safety order was not applicable to its truck. After the jury had been unable to agree on a verdict for several hours, they returned and asked for a reading of the safety order. Therefore, there could be no argument, and, indeed, respondent does not make any, that if there were error, it was not prejudicial.

The safety orders upon which the jury was instructed were these: Subdivision (27) of section 1504 of title 8 of the California Administrative Code, which reads as follows: "Haulage vehicle, as used in these orders, means a self-propelled vehicle including its trailer, used to transport materials on construction projects. The term 'haulage vehicle' includes trucks, truck and trailer combinations, and all other similar equipment used for haulage, but excludes concrete buggies, railroad equipment, lift trucks, loaders, mobile hoists, cranes, and special highway construction equipment as defined by Section 39.5 of the 1955 Vehicle Code." Subdivision (e) of section 1576 of title 8 of the California Administrative Code, which reads as follows: "Warning Device. Every truck with a body capacity of two and one-half cubic yards (2-½ cu. yds.) or more, that is used to haul dirt, rock, concrete, or other construction material, shall be equipped with a warning device that operates automatically while the vehicle is backing. The warning sound shall be of such magnitude that it will normally be audible from a distance of two hundred feet (200'). All haulage vehicles shall be equipped with a manually operated warning device which can be clearly heard for a distance of two hundred feet (200') from the vehicle. This manual device is an acceptable substitute for the automatic one, provided that it is sounded just prior to or immediately following the start of backing. Another acceptable substitute for the use of a back-up warning device is a signalman, in clear view of the operator, who directs the backing operation."

The truck admittedly did not have a warning device that operated automatically while the vehicle was backing, nor a warning device, manually operated, audible at 200 feet, and there was no signalman other than the respondent himself.

We conclude that the safety order does not apply to a flat-bed truck carrying fabricated house frames and that the giving of the instruction was prejudicial error. Our conclusion is based upon the terms of the safety order itself, in the light of what we consider a reasonable construction thereof, upon a construction placed upon this same safety order by the Supreme Court in the case of *Armenta* v. *Churchill*, 42 Cal.2d 448 [267 P.2d 303], and upon comparison of the safety order with other orders contained in the same title of the California Administrative Code.

Section 1576, subdivision (e) requires an automatic warning device, or the sounding of a device audible for 200 feet, or a signalman for "[e]very truck with a *body capacity* of two and one-half *cubic yards* (2-½ cu. yds.) or more, that is used to haul dirt, rock, concrete, or other construction material. . . ." (Emphasis added.) A flat-bed truck does not have a "body capacity" of a certain capacity for all materials which it may carry, while a bin type truck, or, if "bin type" is too restrictive in description, at least a truck which actually has a "body," does have a capacity, measurable in cubic yards, of such things as dirt, rock, and concrete. The capacity of a flat-bed truck would depend on weight rather than on volume, and would vary considerably with the product being hauled. Thus, its capacity to carry steel girders would, of course, be much less than its capacity to carry wooden frames. It would vary, too, depending on whether or not there was a projection beyond the bed of the vehicle, for projections are permissible under certain conditions of warning by red flag in the daytime and red lights at night. (Veh. Code, § 24604.) An interpretation to include flat-bed trucks, with their varying loads, would introduce an element of uncertainty arising from the diverse kinds of materials hauled and the manner of loading, which seems to us incompatible with the terms of the safety order and to be unintended by the Division of Industrial Safety. Moreover, the measuring unit, cubic yards, is one suited to the kinds of materials described in the order, and similar loose materials, and not to materials, even though they are used in the construction of buildings or other structures, which are usually measured by linear units or by units of weight. Thus, an analysis of the order itself leads to the conclusion that the order does not apply to the truck in this case.

However, we are not without assistance from judicial interpretation of this safety order. In the case of *Armenta* v.

*Churchill, supra,* 42 Cal.2d 448, the order (then numbered Safety Order 1753, subd. (b) in tit. 8 of the Cal. Admin. Code and differing from § 1576, subd. (e) in one particular only, and in that particular, as explained below, the present order is more favorable to appellant's position) received judicial construction. Plaintiffs in the *Armenta* case appealed upon the ground that the safety order had not been given to the jury and plaintiffs were sustained in that contention, and judgment for defendants was reversed. Defendants, seeking to justify the omission of the safety order from the instructions to the jury, contended that in its reference to "construction material" it is too vague and uncertain to enable a person to know what is thereby included. The court rejected the contention, saying, at page 454: "It is a regulation expressly applying to trucks hauling 'dirt, rock, concrete or other construction material,' an enumeration of particular items commonly identified with heavy, substantial building operations. Under the doctrine of *ejusdem generis,* the concluding words 'other construction material' would take color from the preceding listing and be limited to substances ordinarily associated in that same class." We believe that because the "other material" must be "limited to substances ordinarily associated in that same class," the class of material cannot be expanded to include such substances as fabricated house frames, which are not ordinarily, if ever, placed in trucks which have a body capacity measured in cubic yards, and which are not in themselves similar to dirt, rock or concrete. The rule of *ejusdem generis,* which was used to sustain the validity of the safety order against the charge of vagueness, now exerts its force against the inclusion of materials dissimilar to those particularly enumerated.

Since the decision in the *Armenta* case, former Safety Order 1753, subdivision (b), discussed therein, has been incorporated in section 1576, subdivision (e) of title 8 of the California Administrative Code, with even more restrictive language making it expressly applicable to trucks "with a body capacity of two and one-half cubic yards (2-½ cu. yds.) or more," in addition to the previous language limiting its application to trucks which "haul dirt, rock, concrete, or other construction material."

The context in which section 1576, subdivision (e) is found provides an additional reason for our conclusion. Subdivision (27) of section 1504 defines a "haulage vehicle" as a "self-propelled vehicle including its trailer, used to transport ma-

terials on construction projects.'' This obviously includes such a truck and trailer as were used in this case. If section 1576, subdivision (e) were intended to apply to all haulage vehicles, including flat-bed trucks, there would have been no need for the particularization of the type of body of the truck and of the type of material. We note, too, that the Division of Industrial Safety requires, in section 1576, subdivision (g), a section removed from 1576, subdivision (e) by but one sentence and one subject matter, that ''[c]ab shields shall be provided on all those two-and-one-half-cubic-yard (2-½ cu. yd.), or larger, trucks that are used in hauling material like gravel, rock, dirt, or loose brick, if they are loaded by means of a power-operated shovel, dragline, or clamshell of three-fourths cubic yard (¾ cu. yd.) capacity or over. The cab shield shall be adequate to protect the driver from the hazard of falling material of the type being handled. (See Fig. 32 in Appendix for suggested cab protection.)'' It would seem that the same type of truck is being referred to in both sections, and in section 1576, subdivision (g) the Division of Industrial Safety gives another example of the kind of ''other construction material'' that it is referring to in section 1576, subdivision (e), namely, ''loose brick.'' All of these things, considered together, bring us to the conclusion expressed above.

We do not deem it necessary to discuss another of appellant's points, which is that the safety order applies only to a vehicle on a construction project, and that the vacant lot was not part of a construction project. Whether lots not presently being built upon may be included in the term ''construction project'' where building is going on in the same area under the same construction company, is a question unnecessary to decide because of our holding that the order does not apply to the vehicle.

It remains for us to say something about the arguments of respondent. He states, in all truth, that it is of no moment to plaintiff whether his hand was injured by the backing of a flat-bed truck or of a dump truck. However, the Division of Industrial Safety has, as we have concluded, limited the application of this particular order to a certain type of haulage vehicle. ▮ The owner or operator of any haulage vehicle has a right to be informed of the safety orders that will apply to his vehicle and will subject him to civil liability and criminal responsibility (the violation of this order is a misdemeanor), so that he can comply with what is required of him, and he is not to be held beyond its terms. Respondent has said that appel-

lant was guilty of general negligence, which may well be, and which, if established as a proximate cause of plaintiff's injury, in the absence of contributory negligence, would sustain a verdict for the respondent. He decided, however, at the trial, to rely heavily on violation of a particular safety order which has specific requirements concerning warning devices or a signalman, an order which we believe did not apply, and the violation of which, if it had applied, would presumptively have been negligence.

Respondent further has argued that if the safety order is not construed to cover the vehicle in this case, then the safety order is discriminatory and invalid. Of course, respondent does not contend that the order actually is invalid because the verdict and judgment are dependent on it, but respondent argues that in order to avoid a construction which would make it invalid, this court should interpret the order so as to include the flat-bed truck, loaded as it was. If the safety order were attacked as discriminatory by a party against whom it was sought to enforce it, such as the owner or operator of a bin type truck, perhaps reasons would be advanced by that party's adversary to show why the order is limited to certain types of vehicles carrying certain types of materials, and on construction projects only. It might be shown that particular hazards attend operations of bin type trucks on construction projects. However that may be, we cannot enlarge the meaning of the order beyond its terms as we find them, under the reasoning that we have set forth above, and we cannot hold liable to its provisions those who would not, by reasonable construction of that order, be charged with knowledge that it was necessary for themselves to comply with it. Besides, the Supreme Court in the *Armenta* case saved the order from invalidity resulting from vagueness by limiting the "other materials" to. materials similar to those described, and if we were now to labor to forestall an attack, not presently made by anyone, against the validity of the act as possibly discriminatory, by reversing the process and removing the necessity that the other materials be of like character to those described, we would indeed be causing an oscillation of the law which would be confusing and unfair to all who must obey it.

The judgment is reversed.

Draper, P. J., and Salsman, J., concurred.

A petition for a rehearing was denied February 8, 1962, and the following opinion was then rendered:

THE COURT.—We deny respondent's petition for rehearing, but we make certain corrections in our factual statement; and, because respondent has altered considerably the emphasis he places on different parts of the safety order, we comment briefly on his argument as freshly stated in his petition for rehearing.

The factual corrections are these: (1) Although the word "frames" was used in the testimony of the drivers, the word "lumber" also was used, and we are quite willing to accept, and we do accept, respondent's statement, because he is respondent and is entitled to the most favorable construction, that the material hauled was lumber intended for, but not fabricated into, house frames, and that there was a load of doors and nails. (2) The vehicle presumably was equipped with a horn audible at 200 feet (there being no evidence to the contrary), but it was not sounded.

 We do not regard the safety order as requiring an automatic warning device on a flat-bed truck, whether the material hauled was lumber or frames, and although doors and nails were part of the load. In his petition for rehearing, respondent, although not conceding that the automatic device requirement does not apply to flat-bed trucks, admits that it is logical that a dump truck is likely to back more often than a tractor and trailer combination, and that there is reason (and, by implication, we take it, *more* reason) to require an automatic device on the former. Respondent now argues that the requirement that all haulage vehicles be equipped with a manually operated warning device audible for 200 feet, and that the same is an acceptable substitute for the automatic one provided it is sounded just prior to or immediately following the start of backing, means not simply an exemption from the automatic device rule for those vehicles which are otherwise obliged to have such a device, but that all haulage vehicle drivers must sound such a device when backing on construction projects. Even if this construction of the safety order were correct, we believe there was prejudicial error in reading the order, including the requirement of automatic device, to the jury.

But we cannot construe the order, as respondent contends it to be, as writing into law a requirement that does not exist, and making it apply to all haulage vehicles on construction projects, not only with civil, but also with criminal, responsibility (Lab. Code, § 6315). By analogy, we note that section 27000 of the Vehicle Code requires all motor

vehicles when operated on a highway to have a horn audible 200 feet, but does not require it to be sounded when the vehicle is backing, sounding of the horn being required when reasonably necessary (Veh. Code, § 27001), which is a question of fact (*Smith* v. *Harger*, 84 Cal.App.2d 361, 368 [191 P.2d 25]) ; backing of a vehicle being regulated only with the limitation that it must be done only when the movement can be made with reasonable safety (Veh. Code, § 22106). Thus, the requirement that a vehicle be equipped with a horn is not equivalent to requiring it to be sounded, and there is no direction in the safety order that all haulage vehicles on construction projects sound horns when backing under penalty of being negligent as a matter of law.

In our opinion, we said that respondent does not make any claim that if there was error, it was not prejudicial, for so it seemed from his brief. Respondent does, in his petition for rehearing, argue that the negligence of the driver was so abundantly shown that any error was not prejudicial. Suffice it to say that the driver testified that he thought it was safe to back when he saw Milloway standing away from the truck, and that, although there was other evidence by which the jury might well have found for plaintiff without the instruction on the safety order, the jury requested a re-reading of the order, and the order converted negligence from a question of fact to a presumption of law against the defendant.

Respondent's petition for a hearing by the Supreme Court was denied March 15, 1962. Peters, J., was of the opinion that the petition should be granted.