Filed 6/17/15  Casey v. Dynalectric CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PATRICIA CASEY et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>DYNALECTRIC COMPANY,<br><br>    Defendant and Respondent. | A139311<br><br>(City & County of San Francisco<br>Super. Ct. No. CGC-11-275879) |

Patricia Casey, Catherine Grabinksi and Jessica Casey (plaintiffs) appeal from the entry of summary judgment in favor of the defendant Dynalectric Company on plaintiffs' negligence claims. Plaintiffs alleged, among other things, that John Casey (hereafter Casey or decedent) was injured and later died as a result of his injuries, after negligent conduct by defendant's employees caused Casey to be exposed to asbestos-containing dust. The trial court found that defendant did not owe Casey a duty of care with respect to his injury because the undisputed facts established that defendant did not know and should not have known that the materials to which it exposed Casey contained asbestos. We conclude, however, that the "General Industry Safety Orders" promulgated by the California Department of Industrial Relations imposed a duty on defendant to exercise reasonable care with respect to the exposure of decedent to significant levels of industrial dust, irrespective of whether defendant knew or should have known the dust contained asbestos. Accordingly, we reverse the judgment and remand for further proceedings.

1

The following facts are undisputed. John Casey was a plumber. In 1968-1969, Casey was employed by Rodoni-Becker Co., Inc, and worked for approximately 12 to 14 months in the construction of Crocker Plaza Building in San Francisco. At the jobsite he worked in the presence of employees of Lera Electric Company, Inc. (Lera), an electrical contractor and the alleged predecessor-in-interest of defendant Dynalectric Company. The Lera employees disturbed and scraped fireproofing off of beams on numerous occasions during the installation of electrical materials. This created debris and clouds of fine dust in the air throughout the site which decedent could see and taste. The biggest disturbances occurred when Lera employees shot wires into the decking, which caused the fireproofing to come down on everybody like a "rain forest." Neither Casey nor defendant knew at that point that the fireproofing contained asbestos.

Casey was diagnosed with mesothelioma on or about January 2010. Casey and his wife Patricia filed a complaint on March 22, 2010, against defendant for personal injuries and loss of consortium. The complaint claims that Casey was exposed to asbestos by many defendants including Lera, as the result of which he contracted asbestos related diseases and injuries. After Casey passed away in July 2011, Patricia and her daughters Catherine Grabinksi and Jessica Casey filed a second amended complaint alleging, among other things, causes of action for negligence, as the successor-in-interest and legal heirs of decedent. [1]

Defendant moved for summary judgment of plaintiffs' negligence claim on the ground that defendant did not owe a duty of care to decedent. Defendant argued that the undisputed facts establish that when the work was performed in the late 1960's its employees did not know and should not have known they were disturbing asbestos containing material in decedent's presence. In the face of an unforeseeable injury, defendant asserted, there can be no duty and, therefore, no negligence.

---

[1] Plaintiffs' complaint also alleged a cause of action for strict products liability that was withdrawn by plaintiff prior to the ruling on the summary judgment motion.

Plaintiffs conceded that there was no evidence that defendant's employees knew they were exposing decedent to asbestos dust. They argued, however, that the evidence established a triable issue of fact as to whether defendant should have known that the conduct of its employees would expose decedent to asbestos. Alternatively, they argued that whether or not defendant's employees knew or should have known that the dust they were generating contained asbestos, they knew or should have known that exposure to any industrial dust over a certain concentration is hazardous and they had a duty to take precautions to protect decedent from such exposure. Plaintiffs relied in large part on General Industry Safety Orders (safety orders) (Cal. Code Regs., tit. 8, § 3200 et al.) promulgated by the California Department of Industrial Relations in effect at the time of the exposure. The safety orders establish maximum exposure thresholds for harmful industrial dusts and prescribe standards and methods of control, protection against, and isolation of the hazardous dusts.

The trial court granted defendant's motion for summary judgment. The court found that plaintiffs "failed to submit evidence creating a triable issue whether defendant owed a duty to plaintiff." The court explained that plaintiffs failed to submit evidence creating a triable issue whether defendant knew or should have known that the products or materials to which it exposed plaintiff contained asbestos and that even if a "duty was created pursuant to the 1955 [safety orders], plaintiffs failed to submit evidence creating a triable issue whether defendant knew or should have known that the dust allegedly disturbed by defendant's employee in Mr. Casey's presence . . . was hazardous (i.e. asbestos) and exceeded the dust count acceptable under the 1955 [safety orders]."

Plaintiffs timely filed a notice of appeal.

## DISCUSSION

The standard of review for summary judgment is well established. We independently review an order granting summary judgment, viewing the evidence in the light most favorable to the nonmoving party. (*Lackner v. North* (2006) 135 Cal.App.4th 1188, 1196.) A moving defendant meets its burden of showing that a cause of action has no merit by establishing that one or more elements of a cause of action cannot be

3

established or that there is a complete defense. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849-850; *Lackner v. North*, *supra*, at p. 1196.) " 'Once the moving party has met its burden, the opposing party bears the burden of presenting evidence that there is any triable issue of fact as to any essential element of a cause of action.' " (*Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1485.) In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. (*Stationers Corp. v. Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417.)

As noted above, the sole basis for defendant's motion was that plaintiff could not establish that defendant owed a duty of care to decedent. " 'The threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion. [Citations.] Whether this essential prerequisite to a negligence cause of action has been satisfied in a particular case is a question of law to be resolved by the court.' " (*Artiglio v. Corning Inc.* (1998) 18 Cal.4th 604, 614.)

The general rule in California is that "[e]veryone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person . . . ." (Civ. Code, § 1714, subd. (a).) "In order to limit the otherwise potential infinite liability which would follow every negligent act, the law of torts holds defendant amenable only for injuries to others which to defendant at the time were reasonably foreseeable." (*Dillon v. Legg* (1968) 68 Cal.2d 728, 739.) "[I]in analyzing duty, the court's task ' " 'is not to decide whether a particular plaintiff's injury was reasonably foreseeable in light of a particular defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party.' [Citation.] Viewed in this light, the question of foreseeability in a 'duty' context is a limited one for the court, and readily contrasted with the fact-specific foreseeability

4

questions bearing on negligence (breach of duty) and proximate causation posed to the jury or trier of fact." ' " (*Laabs v. Southern California Edison Co.* (2009) 175 Cal.App.4th 1260, 1273.)

Defendant argues the trial court correctly concluded that because defendant's employees did not know, and should not have known, they were disturbing asbestos-containing material in decedent's presence, they had no duty to protect against the unforeseeable risk that he would be injured by exposure to asbestos. Plaintiffs contend that defendant defines the duty too narrowly. They argue that defendant's employees knew or should have known that exposure to significant amounts of occupational dust generally pose a risk to those exposed to the dust and that defendant's injury resulted from his exposure to that dust. Therefore, plaintiffs argue, defendant owed a duty of care to exercise reasonable care to protect Casey from that risk. We agree.

In opposition to the motion, plaintiffs submitted the declaration of Richard Cohen, M.D., as an expert on occupational medicine and industrial toxicology. Cohen opined, among other things, that "by the 1960's a company, working in construction and on jobsites where contractors and laborers were working alike, should have been aware of potential health hazards associated with exposure to certain occupational dusts generally." In his declaration, Cohen detailed the history of the safety orders on which he relied, in part, in forming his opinion.

The safety orders, as first issued in 1936, applied "to every place of employment where a work or process is carried on by which dusts . . . of a harmful nature are produced or generated, or exist independently of the work or process, which may be inhaled in quantities or concentrations that constitute harmful exposure." (Cal. Dept. of Industrial Relations, Dusts, Fumes, Vapors and Gases Safety Orders, Order No. 1901, eff. Dec. 28, 1936.) From 1936 through their amendment in 1948, the safety orders defined "harmful exposure" as exposure to "dusts (other than sillicas, asbestos and those

of a toxic nature),” or to “total dust,” exceeding 50 million particles per cubic foot of air.[2] (*Id.*, Order No. 1903, eff. Dec. 28, 1936, & as amended July 20, 1948.)

In 1955, the orders were reorganized and amended, but continued to set the maximum exposure level for “total dust” at 50 million particles per cubic foot of air. (Cal. Code Regs., tit. 8, § 4101, subd. (l) & app. A, Reg. 55, No. 2-B (Jan. 22, 1955).) Appendix A, which contains the applicable threshold levels, explains that the “tables represent concentrations of various substances in which it is considered safe for men to work whether for brief periods or for full working periods daily for an indefinite time. . . . The figures are given as an indication of current opinion and practice, doubts being resolved on the side of safety.” (*Ibid*.) The 1955 safety orders directed the employer to change, whenever practicable, the equipment, material, or process producing dust in quantities and conditions which produce harmful effects so as to eliminate the harmful products, unless the employer elects to control such hazards in accordance with the provisions of the orders. (Cal. Code Regs., tit. 8, § 4102.) The orders prescribe standards and methods of control, protection against, and isolation of the hazardous dusts when they are produced in the course of employment. These include control by ventilation; provision of protective respiratory equipment where removal of the hazardous substance by ventilation is impracticable; using mediums allaying dust, and isolation of hazardous operations. (Cal. Code Regs., tit. 8, §§ 4103, 4104, 4105, 4106.)[3]

---

[2] The safety orders set a lower maximum exposure threshold for asbestos at five million particles per cubic foot of air. (Cal. Dept. of Industrial Relations, Dusts, Fumes, Vapors and Gases Safety Orders, Order No. 1903, eff. Dec. 28, 1936, as amended July 20, 1948.)

[3] We note that contrary to the statement in Cohen’s declaration, the safety orders, as amended effective June 1968, no longer include a threshold maximum for total dust. (Cal. Code Regs., tit. 8, app. A, Reg. 68, No. 21-A (June 1, 1968).) We offer no opinion as to the effect of the amendment with respect to defendant’s duty beginning in June 1968. It is sufficient for purposes of considering defendant’s motion for summary judgment that, as discussed below, defendant owed a duty to prevent harmful exposure to total dust under the safety orders in effect for at least part of the 1968-1969 period (i.e., until May 31, 1968).

It is well established that such safety orders are admissible "to establish a standard or duty of care in all negligence and wrongful death actions, including third party actions." (*Elsner v. Uveges* (2004) 34 Cal.4th 915, 928; *Porter v. Montgomery Ward & Co., Inc*. (1957) 48 Cal.2d 846, 847, 849; *Armenta v. Churchill* (1954) 42 Cal.2d 448, 455.) In this case, the safety orders establish a duty to exercise reasonable care to avoid exposing others to significant levels of industrial dust. Casey's injury, which they allege was caused by exposure to industrial dust, was a foreseeable result of defendant's allegedly negligent conduct. Defendant presented no evidence that the industrial dust generated by its workers was within the acceptable limit established by the safety orders, so that the burden of presenting conflicting evidence never shifted to the plaintiffs.

In all events, contrary to the trial court's order, plaintiffs' evidence creates a triable issue of fact as to "whether defendant knew or should have known that the dust allegedly disturbed by defendant's employee in Mr. Casey's presence . . . exceeded the dust count acceptable under the 1955 [safety orders]." In his declaration, Cohen opined that "[i]n light of John Casey testimony that Lera Electric generated large amounts of visible dust, but took no precautions (such as ventilation, water, or protective gear) to reduce such dust- including those required by the [safety orders] Lera Electric's conduct probably did not comply." The evidence that the dust generated by the work performed by Lera was visible in "rainforest" concentrations supports a reasonable inference that the total dust exceeded the maximum threshold and created a hazardous condition as to which it had the duty to take reasonable measures to avoid exposing others.

In the trial court, defendant challenged the admissibility of much of this evidence. The court found that Cohen's opinion that defendant knew or should have known of the dangers of industrial dust generally was irrelevant because "[t]he issue before the Court is whether Defendant knew or should have known that asbestos was present in the materials disturbed at Dynalectric Company jobsites where the decedent was present." The court also found irrelevant Cohen's opinion that defendant did not comply with applicable safety orders, indicating again that "[t]he issue before the court is whether defendant knew or should have known that asbestos was present in the material disturbed at

Dynalectric jobsites where the plaintiff was present. . . . The only relevant issue is whether defendant knew or should have known that the materials it disturbed contained asbestos." As discussed above, the court viewed the issue too narrowly. Even if defendant did not have actual or constructive knowledge of the presence of asbestos, it was obliged to know, and to take reasonable steps to avoid, the hazard of exposing others to excessive levels of industrial dust. That the dust in this case contained asbestos is relevant to the issues of causation and damages, but defendant's unawareness of the presence of asbestos did not negate its duty to avoid creating conditions that the safety orders deemed hazardous and to comply with the limits imposed by the safety orders. At trial, plaintiff will have the burden of establishing that defendant breached this duty.

The court also sustained defendant's objection to plaintiff's request for judicial notice of the various safety orders regarding the control of dust. The court indicated that plaintiff's "request fails to establish what orders were in place at the relevant time period, 1968-1969. The 1936, 1945 and 1955 [safety orders] are irrelevant to this case." However, these earlier safety orders may well bear on what a reasonable electrical contractor knew or should have known in 1968 about the dangers of industrial dust. Cohen's opinions and the safety orders issued in 1936, 1945 and 1955 are relevant and should not have been excluded.

In conclusion, the safety orders imposed a duty upon defendant to control or isolate dust produced in quantities giving rise to harmful exposure for part if not all of the relevant time period. A triable issue of fact exists as to whether the dust created by defendant's conduct exceeded the maximum threshold levels set by the safety orders. Because summary judgment was erroneously granted on the ground that defendant's unawareness of the presence of asbestos negated its duty to avoid generating excessive levels of industrial dust, we must reverse the judgment and remand the action for further proceedings. We of course express no opinion on the numerous issues that remain for determination, including the factual questions of the content and quantities of the dust generated by defendant's work at the jobsite in question, whether defendant was

negligent in failing to take reasonable protective measures, causation of Casey's injuries and damages.

## DISPOSITION

The judgment is reversed and the matter is remanded for further proceedings.

_____
Pollak, Acting P.J.

We concur:

_____
Siggins, J.

_____
Jenkins, J.